UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE DiMUCCIO; NOAH DiMUCCIO,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY; DOES I through 50, inclusive,<br><br>Defendants. | No. 2:16-cv-01307-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs Jeanette DiMuccio ("Jeanette") and Noah ("Noah") DiMuccio (collectively "the DiMuccios" or "Plaintiffs" unless otherwise noted) seek breach of contract damages from Government Employees Insurance Company ("GEICO") pursuant to an assignment of rights as to those damages from GEICO's insured, Sherita Wicks ("Sherita").[1] Plaintiffs originally filed their lawsuit in state court but the matter was removed here by GEICO on grounds that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

GEICO now moves for summary judgment on grounds that the breach of contract claim asserted against it fails as a matter of law on multiple grounds. According to

---

[1] Contrary to its typical protocol, the Court refers to the various parties by their first names if they share a surname.
[2] Having determined that oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

GEICO, there was no duty to defend either Sherita or her father, Arthur Wicks ("Arthur"), at the time the underlying subrogation claim was initially tendered to it for defense because statements obtained from both shortly after the underlying motor vehicle accident indicated that Sherita was not driving Arthur's car with his permission at the time of the accident, and accordingly coverage under the GEICO policy was excluded. GEICO also argues that it cannot be liable for breach of contract when it ultimately paid out its full policy limits to settle claims asserted against the Wicks. Finally, according to GEICO, its insurance contract should be voided with respect to coverage for the accident in question in any event because of the Wicks' misrepresentations about how the accident occurred.

As set forth below, the Court does not find these arguments persuasive, and accordingly denies GEICO's Motion for Summary Judgment.[2]

## BACKGROUND

Factually, the matter arises from a July 16, 2010, four-vehicle automobile accident that occurred when Sherita, driving a vehicle owned by her father, Arthur, rear-ended a car which, in turn, was pushed into an automobile driven by Jeanette. Def.'s Statement of Undisputed Facts ("SUF"), Nos. 1-2. Sherita was found to be principally at fault for causing this accident. Id. at No. 4. At the time of the collision, Sherita was insured through a policy of automobile liability insurance issued by GEICO that contained bodily injury per person/per occurrence coverage limits of $15,000/$30,000 respectively. Although her policy provided coverage for her operation of a non-owned car, that coverage was subject to an exclusion if the non-owned vehicle was used without its owner's permission. Id. at Nos. 5-6.

///

---

[2] Having determined that oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

2

Sherita was driving her father's car—which was apparently uninsured—on the day of the accident because her own vehicle (the named vehicle on GEICO's policy) was inoperable. GEICO took statements from both Sherita and Arthur several days after the accident in which Sherita indicated she simply took the keys to her father's vehicle without his permission. Arthur, for his part, corroborated that he had not given permission. On that basis, GEICO denied coverage on grounds that Sherita's use of Arthur's car, as a non-owned vehicle, was not permissive.

In the meantime, Jeanette DiMuccio, who was injured as a result of the accident, received workers' compensation benefits because she was allegedly in the course and scope of her employment at the time the incident occurred. Id. at No. 14. Jeanette's workers' compensation carrier, Pacific Indemnity Company ("Pacific"), asked GEICO to acknowledge coverage for the subrogation lawsuit it had filed on or about November 19, 2010, against the Wicks in order to recoup its workers' compensation payments to DiMuccio. Id. at Nos. 13, 15. On July 22, 2011, GEICO sent Pacific a letter denying coverage on grounds that there was no permissive use of the vehicle driven by its insured, Sherita, at the time of the accident. Id. at No. 21. About ten days later, however, on August 3, 2011, Pacific sent GEICO correspondence which included new declarations from both Arthur and Sherita that contradicted their earlier recorded statements and averred that Sherita did have permission to use her father's car. Id. at No. 23. Then, on September 21, 2011, counsel for Pacific served a demand for policy limits against the GEICO policy. Id. at No. 26.

Probably because the limits of GEICO's policy were low, GEICO decided on September 29, 2011, to go ahead and extend coverage without any reservation of rights. Id. at Nos. 27-28; Pls.' Additional Material Fact ("AMF") No. 8. GEICO notified its insureds that same day of its decision. Id. at No. 3.

///
///
///

By October 3, 2011, GEICO obtained a copy of Pacific's lawsuit against the Wicks, along with the requisite proof of service. The next day, GEICO advised Sherita, in writing, that it had received the lawsuit and would be referring the matter for defense to an attorney who was "a salaried GEICO employee". Id. at Nos. 5-6.

Prior to GEICO deciding to assume the Wicks' defense, Pacific's lawsuit against the Wicks, which had been filed nearly a year before, had proceeded forward. The Wicks had filed answers to the lawsuit in pro se (SUF at No. 16) and, on January 17, 2011, Pacific served Requests for Admissions which included a request that Sherita admit she was distracted and failed to see traffic stopped ahead of her just prior to the accident. The Wicks failed to respond, and by order dated July 21, 2011, the matters subject to the admissions request were deemed admitted. Id. at No. 20. This prompted Pacific to file, on July 29, 2011, a Motion for Summary Judgment predicated upon the Wicks' admissions. Id. at No. 22. That motion was scheduled to be heard on October 18, 2011, some two weeks after GEICO assumed the Wicks' defense and referred the matter to its in-house counsel.

The GEICO employee to whom the defense was assigned, attorney Kevin Rodriguez, failed to either file any opposition to Pacific's request for summary judgment, seek a continuance of the hearing, or appear at the hearing itself. AMF at Nos. 10-12. Pacific's motion was consequently granted as unopposed on October 18, 2011. Judgment was thereafter entered for Pacific, on October 28, 2011, in the amount of $187,656.85 as to Sherita Wicks, individually, and in the amount of $15,000 plus $1,123.50 in recoverable costs against Arthur and Sherita, jointly and severally. Id. at No. 30; Pls.' Compl, ¶ 12; Judgment, attached to GEICO's Request for Judicial Notice ("RJN") as Ex. "G."[3] Mr. Rodriguez was subsequently served with a Notice of Entry of that judgment on November 8, 2011. Decl. of Stephen Snyder, Ex. 4.

Despite Mr. Rodriguez' notice of the above described judgment, GEICO neither appealed the judgment against the Wicks nor took any action to set it aside. This is

---

[3] GEICO's RJN, made pursuant to Federal Rule of Evidence 201, is unopposed and is GRANTED.

despite the fact Rodriguez, even before formally served with notice of the judgment, asked Pacific's counsel to vacate the judgment in order to "save" his clients' credit rating. Tellingly, the email Rodriguez sent containing that request was signed off by Rodriguez as "GEICO Staff Counsel." See November 6, 2011 email from Kevin Rodriguez, attached to Snyder Decl., Ex. 3.

GEICO did offer its available policy limits to settle all claims against the Wicks, including not only the Pacific subrogation action but Plaintiffs' own personal injury lawsuit and at least two other subrogation claims asserted by other carriers whose insureds had been involved in the underlying four-vehicle automobile accident. Despite Pacific's individual demand for policy limits, the Wicks apparently agreed with GEICO that accepting that demand would be unwise since it would leave them exposed to the additional demands. See Burich Decl., 21.

Ultimately, most of the litigation spawned as a result of the subject accident was settled by way of global mediation on January 29, 2014. GEICO obtained a release on behalf of Arthur and Sherita from the DiMuccios as to their own personal injury lawsuit, and further settled two other subrogation claims against the Wicks in exchange for policy limits. SUF at Nos. 36-37. Sherita, however, assigned Pacific her purported breach of contract claims against GEICO in exchange for Pacific's agreement not to enforce its judgments against the Wicks. Id. at No. 38. Pacific, in turn, assigned the breach of contract rights it had obtained to the DiMuccios, who filed the present action. Plaintiffs' lawsuit asserts a single cause of action for breach of contract against GEICO. GEICO moves for summary judgment, purportedly on grounds that GEICO's initial denial of coverage was proper because of the statements it obtained indicating that Sherita's use of her father's car was not permissive. GEICO further claims that its policy should be void because of misrepresentations its insureds made as to what happened. In response, Plaintiffs contend that this case is not about GEICO's initial denial of coverage, but instead hinges on GEICO's alleged failure to meets its contractual obligations to the Wicks once it did decide to go ahead and provide a defense.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

////

////

////

**ANALYSIS**

Under California law, which governs this diversity action, an insurer's duty to defend is determined from the policy, the complaint, and all facts known to the insurer. Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993). An insurer's duty to defend "is a continuing one, arising on tender of the defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is not potential for coverage." Id. at 295, citing Lambert v. Commonwealth Land Title Ins Co., 53 Cal. 3d 1072, 1077, 1079 (1991). An insurer that fails to adequately defend it insured can be liable for a judgment against its insured due to such failure. See Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 274 (1969). That liability is contractual in nature. Buss v. Superior Court, 16 Cal. 4th 35, 47 (1997).

As an initial matter, in analyzing the scope of GEICO's obligations in this case, the Court must first note GEICO's initial contention that the Wicks misrepresented whether Sherita had permission to use Arthur's vehicle at the time of the underlying motor vehicle accident. According to GEICO, its policy should be voided due to those misrepresentations, which allegedly precluded GEICO from affording a defense earlier. Those matters are nonetheless not germane, at the present time, in determining whether any breach on GEICO's part occurred. This is because once the Wicks allegedly changed their story with regard to permissive use and claimed in additional statements taken by Pacific that Sherita in fact had her father's assent to use of his car on the day in question, GEICO nonetheless elected to provide a defense to the Wicks without any reservation of rights. Had a reservation of rights been claimed, and if GEICO argued that coverage was precluded because of earlier claimed misrepresentations, GEICO might have been able to hold the Wicks responsible for their acts by either claiming that their ability to provide an adequate defense was compromised or that the misrepresentations voided the policy entirely. But, by accepting the defense without reservation (an act that relieved GEICO of any obligation to provide independent counsel

8

to the Wicks due to a potential conflict of interest in the carrier-appointed counsel representing both GEICO and its insureds), GEICO waived those arguments. Once GEICO unequivocally and without reservation accepted the Wicks' defense in the face of their claimed misrepresentations, any argument that GEICO had with respect to those misrepresentations was no longer relevant. Garamendi v. Golden Eagle Ins. Co., 116 Cal. App. 4th 694, 719 (2004) ("If a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage")

Instead, the salient issue now concerns not what occurred before GEICO assumed the defense of the Wicks, but rather turns on whether the defense, once provided by GEICO, fell short in meeting the duties owed to its insureds. In that regard, the DiMuccios, as assignees of the Wicks' claims against GEICO, claim that GEICO, through its staff counsel, failed to do anything to prevent a judgment in excess of policy limits being entered against the Wicks. Additionally, according to Plaintiffs, once GEICO's staff counsel found out about the judgments, he failed to do anything to either appeal or set them aside.

GEICO argues it bears no responsibility for Plaintiffs' contentions in this regard because they amount to attorney malpractice claims and cites authority to the effect that insurance carriers are not liable for the malpractice of trial counsel. See Merritt v. Reserve Ins. Co., 34 Cal. App. 3d 858, 880-82 (1973). Merritt, however, was not decided in the face of facts like those confronted here, where Kevin Rodriguez was a salaried employee of GEICO and even described himself in correspondence to Pacific's lawyer as "GEICO Staff Counsel." Under those facts, this Court can certainly not determine as a matter of law that Rodriguez was an independent counsel akin to the law firm hired by the carrier in Merritt. Consequently, while the Court in Merritt notes that "we do not accept the claim that vicarious liability falls on one who retains independent

trial counsel to conduct litigation on behalf of a third party when retained counsel have conducted the litigation directly" (id. at 880, emphasis added), that distinction appears to be absent from this case. GEICO can hardly argue, like Merritt, that Rodriguez acted as an "independent contractor…. not subject to the control and direction of [his] employer," when GEICO has admitted that Rodriguez was a GEICO employee. See id. Therefore Merritt is inapposite, and the Court cannot find at this juncture, and under the facts of the present case, that GEICO bears no responsibility whatsoever for Rodriguez' conduct in providing a defense.[4] Moreover, because Plaintiffs here are not suing Rodriguez for malpractice, but instead are proceeding against GEICO by way of assignment for having failed to provide an adequate defense in the first instance, GEICO's claim that this lawsuit should be barred because legal malpractice claims are not assignable is unavailing.[5]

Having determined GEICO's potential culpability in this matter, we next look to whether the defense provided by its employee, Rodriguez, to Pacific's indemnity action was inadequate to discharge his duty in that regard. As stated above, the Wicks' defense in Pacific's subrogation claim was assigned to Rodriguez some two weeks before Pacific's pending summary judgment against the Wicks was scheduled to be heard. Rodriguez neither filed an opposition nor appeared at the hearing on the Wicks' behalf. He was served with a Notice of Entry of Judgment after Pacific's request for summary judgment was granted, and he still failed to either seek to have the judgment set aside or to appeal the judgment despite the fact that the judgment, at least as to the $187,687.85 entered against Sherita, grossly exceeded the $15,000 per person coverage limit contained in the GEICO policy. Significantly, too, after being served with

---

[4] GEICO correctly asserts that the retention of in-house counsel does not necessarily alter the tripartite attorney-client relationship that exists when an attorney retained by an insurance company to defend its insured and therefore owes fiduciary duties to both insurer and insured. Gafcon, Inc. v. Ponsor & Assoc., 98 Cal. App. 4th 1388 (2002), which it cites for that assertion, nonetheless does not state that a carrier cannot bear responsibility for representation provided by its own employees, as GEICO appears to claim.

[5] Under the particular facts of this case, the Court rejects GEICO's claim that the gravamen of Plaintiffs' claims against it sounds in malpractice and is consequently non-assignable.

notice of the judgment, Rodriguez went so far as to ask Pacific's counsel to vacate the judgment in order to "save" his clients' credit rating.

The California Supreme Court has held that an insurer's failure to move to set aside a judgment against its insureds can constitute a breach of the insurer's contractual duty to defend, even where, as here, the insurer assumed the defense after litigation has commenced. See Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 886 (1978) (noting that even if the carrier had little or no time to take action before judgment was entered, California Code of Civil Procedure § 473 permits the judgment to be set aside up to six months later).

In the present matter, Mr. Rodriguez' inaction, which left Sherita exposed to a substantial excess judgment, appears at this point to have been woefully inadequate and cannot immunize his employer, GEICO, from any responsibility for purposes of the present motion. Additionally, and in any event, according to the Declaration of GEICO Claims Examiner Teresa Burich, it appears undisputed that GEICO itself obtained hard copies of the entire Pacific claims file by, at the latest, November 23, 2011. Burich Decl., ¶ 27.[6] Those file contents presumably included information pertaining to the summary judgment Pacific had obtained against the Wicks, and would have been provided at a point just over a month after Pacific's motion had been granted and well in advance of the six-month deadline for setting aside that judgment. Despite that apparent knowledge, GEICO still failed to ensure that Rodriguez or anyone else did anything to protect its insureds by attacking the judgment. The fact that GEICO ultimately paid out its full policy limits to settle the various claims asserted against the Wicks does not alter that fact since Sherita was still left with an excess judgment over and above those limits that had been levied against her. Sherita ultimately had to assign her own rights against GEICO in order to obtain a covenant that Pacific would not attempt to execute on that judgment.

---

[6] The Court notes that Plaintiffs have interposed various objections to portions of the Burich Declaration. To the extent this Memorandum and Order relies on matters addressed in the Declaration, those objections are overruled.

**CONCLUSION**

For all the foregoing reasons, Defendant GEICO's Motion for Summary Judgment (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated: March 17, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE